IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DAN ZABEL TRADING COMPANY, INC., an Oregon corporation, | ) ) ) | Civil No. 10-805-JE |
| Plaintiff, | ) ) ) | FINDINGS AND RECOMMENDATION |
| v. | ) ) | |
| SAIA, INC., aka SAIA MOTOR FREIGHT LINE, a foreign corporation, | ) ) ) | |
| Defendant. | ) ) | |

    Larry R. Davidson
    1850 Benjamin Franklin Plaza
    1 SW Columbia
    Portland, OR 97258

        Attorney for Plaintiff

FINDINGS AND RECOMMENDATION - 1

John A. Anderson
Kevin M. Anderson
Anderson & Yamada, P.C.
9755 SW Barnes Road
Suite 675
Portland, OR 97225

    Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Dan Zabel Trading Company, Inc. (Zabel) brings this action seeking recovery for the value of 1,870 pounds of fungicide that was lost in shipment by defendant Saia, Inc., aka Saia Motor Freight Line (Saia). Plaintiff Zabel seeks a summary judgment establishing that it is entitled to recover the invoice value of the fungicide. Defendant Saia seeks a partial summary judgment limiting plaintiff's potential recovery to $1 per pound of the missing fungicide.

For the reasons set out below, defendant Saia's motion for partial summary judgment should be denied, and plaintiff Zabel's motion for summary judgment should be granted.

**Factual Background**

On May 18, 2009, plaintiff Zabel, a distributor of fertilizer and related products, tendered two pallets of fungicide to defendant Saia for shipment from American Falls, Idaho to Pasco, Washington. The invoice price for the fungicide, which weighed 3400 pounds, was $80,465.00. Plaintiff Zabel prepared a bill of lading for the cargo, which was to be shipped at a "pallet" rate to which a "piece charge" applied. The "pallet rate" and a fuel surcharge resulted in a shipping bill of $197.19 instead of the $458.25 charge which would have applied if the pallet rate had not been used.

FINDINGS AND RECOMMENDATION - 2

The bill of lading noted that a "liability limitation for loss or damage in this shipment may be applicable," and referenced 49 U.S.C. § 14706(c)(1)(A) and (B). A section allowing for the insertion of a "declared value" if the shipping rate was to be dependent on value was left blank.

The Bill of Lading stated that the goods were

> [r]eceived, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to the rates, classifications and rules that have been established by the carrier and are available to the shipper on request. *** Shipper hereby certifies that he is hereby familiar with all the bill of lading terms and conditions in the governing classification and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

In July, 2008 defendant Saia provided plaintiff Zabel a document entitled "Application of Discounts." This document, which defendant Saia refers to as "the Quote," set out pricing for pallet shipments at special discounted rates.[1] The document stated that "ALL SHIPMENTS ARE SUBJECT TO SAIA 170 RULES TARIFF," and concluded with as follows: "For Carrier's cargo liability, see Item 108 of the Saia 170 series rules tariff which is available at www.saia.com."

Item 108 of the tariff, captioned "Carrier Liability For Cargo Loss and Damages Claims and Limitations of Liability," sets out Saia's potential liability for damaged or lost cargo. Paragraph 11 of Item 108, entitled "LIABILITY FOR SHIPMENT PRICED BY HANDLING UNIT," provides that Saia's liability for loss will be limited to either the actual invoice value of the cargo lost or damaged or determined according to one of three other

---

[1]Dan Zabel, who signed the bill of lading for plaintiff Zabel, states that "[t]he purpose of the document was to confirm my discounts and pallet pricing that I negotiated with Saia for the cargo that I tendered to Saia for shipment."

FINDINGS AND RECOMMENDATION - 3

factors. Resolution of the present dispute turns on the construction of this paragraph, the relevant portions of which are fully set out and addressed below.

One pallet of plaintiff's fungicide arrived at its destination without incident. The other did not, and has never been found. In the present action, plaintiff seeks to recover the value of the missing fungicide pursuant to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 et seq., and under common law breach of contract and common law conversion claims.[2]

### Standards for Evaluating Motions for Summary Judgment

Federal Rule of Civil Procedure 56 (c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor.

---

[2]The pending motions address only defendant Saia's potential liability under the Carmack Amendment.

FINDINGS AND RECOMMENDATION - 4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## Discussion

The Carmack Amendment provides that interstate motor carriers like defendant Saia are generally liable for the "actual loss or injury to the property" they transport. 49 U.S.C. § 14706(a). An exception to this rule, which defendant Saia contends it has satisfied, allows a carrier to

> establish rates for the transportation of property . . . under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and the shipper . . . .

49 U.S.C. § 14706(c)(1)(A).

Section 14706(c)(1)(B) requires a carrier to

> provide . . . to the shipper, a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based. The copy provided by the carrier shall clearly state the dates of applicability of the rate, classification, rules, or practices.

The Ninth Circuit Court of Appeals held that, in order to limit liability under the Carmack Amendment, a carrier must

> (1) maintain a tariff in compliance with the requirements of the ICC; (2) give the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement as to the choice of the carrier liability limit; and (4) issue a bill of lading reflecting that agreement before moving the shipment.

FINDINGS AND RECOMMENDATION - 5

Hughes Aircraft Co. v. N. Am. Van Lines, Inc., 970 F.2d 609, 611-12 (9th Cir. 1992). After Hughes was decided, Congress eliminated the requirement that carriers of non-household goods file tariffs with the ICC. OneBeacon Ins. Co. v. Haas Industries, Inc., 634 F.3d 1092, 1099 (9th Cir. 2011). With that change, under the first of the requirements in the Hughes test, a carrier must, at the shipper's request, provide a copy of its "rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based." Id. at 1100.

The parties have cited, and I have found, no Ninth Circuit decisions addressing the limitation of liability of a carrier where, as here, the shipper rather than the carrier prepares the bill of lading. However, in Siren, Inc. v. Estes Express Lines, 249 F.3d 1268, 1274 (11th Cir. 2001), the Eleventh Circuit held that, if a shipper drafts a bill of lading that incorporates language "universally understood throughout the motor carrier industry to limit the liability of the carrier," the shipper is bound by the limiting terms of the contract. In analyzing the pending cross motions for summary judgment, I assume that, if it were presented with this issue, the Ninth Circuit would agree.

Here, there is no question that the first requirement of the Hughes/OneBeacon test for limiting carrier liability was satisfied because defendant Saia made its tariff available to defendant Zabel, and that the second requirement was satisfied because the shipper had an opportunity to choose between different levels of liability. The problem arises with the third part of the test, which requires that the carrier obtain the shipper's agreement concerning the liability limitation. As noted in the background section above, the limitation of liability upon which defendant Saia relies is set out in paragraph 11 of Item 108 in the tariff. The relevant portion of that paragraph states as follows:

> 11. Liability For Shipment Priced By Handling Unit
>
> Saia's liability for loss, damage, or destruction to any shipment, or part thereof, that has been priced per handling unit (per piece, per pallet, per drum, etc.) is limited to:
>
> A. Actual invoice value of the cargo lost or damaged, OR
>
> B. Limited liability provisions of the Bill of Lading, NMFC, or Saia Tariff 170-D (see section 14, [sic] OR
>
> C. Applicable limited liability provisions of the NMFC, OR
>
> D. A maximum of $1.00 per pound, per package, whichever is less, provided such declaration of value appears on the Bill of Lading.
>
> *****
>
> For EXCESS LIABILITY COVERAGE, Handling unit rates will not apply and it will be rated at actual class rate with applicable additional liability charges. See Section 8 for details on new and section 9 for other than new (used).
>
> Regardless of the packaging, if the rate selected by the shipper is based upon such unit pricing, this Section shall take precedence over the other liability limitations that may apply to such commodities if they were not shipped at a shipping rate priced per handling unit. When handling units are consolidated in larger handling units such as boxes into cartons, or cartons onto pallets, the largest handling units shall govern the liability limitation as the per package limitation.

Dan Zabel asserts that the "Application of Discounts" provided to plaintiff Zabel in July, 2008 was simply intended to confirm the "discounts and pallet pricing" he negotiated with Saia, and that no limitation of liability was ever discussed with Saia. However, as noted above, the concluding sentence of that document states that Saia's "cargo liability" is set out in Item 108 of the Saia 170 series rules tariff, and provides a website address at which the tariff can be found. As is also noted above, the Bill of Lading that plaintiff Zabel prepared stated that the carrier's liability might be limited. In addition, the fungicide shipment giving

FINDINGS AND RECOMMENDATION - 7

rise to this action was priced by pallet, a type of "handling unit" explicitly covered by Paragraph 11.

Under these circumstances, I am satisfied that, regardless of whether Dan Zabel had ever read Paragraph 11 of Item 180, plaintiff Zabel was on notice of its existence and was bound by its terms. The question instead is whether Paragraph 11 effectively limited the carrier's liability to $1 per pound of cargo, as defendant Saia contends.

During oral argument of the parties' cross motions for summary judgment, I noted significant obstacles to concluding that Paragraph 11 effectively limits Saia's potential liability for lost or damaged cargo to $1 per pound. Further reflection has not alleviated my concerns. Most notably, this paragraph does not begin with a declaration that liability is limited to <u>the</u> <u>lesser</u> of succeeding items, or conclude with a declaration that liability is limited to <u>the</u> <u>lesser</u> of preceding ones. An explicit "lesser of" limitation is simply not there.

In the absence of a "lesser of" clause, there is no way of determining how a choice is to be made among subparagraphs A, B, C, and D, and the phrase "limited to" in the first sentence of Paragraph 11 could mean that liability cannot exceed the <u>greater</u> of these measures of damages. It could be argued that the term "limited to" in the first sentence is intended to clarify that, when a shipment is priced by "handling unit," the carrier cannot be liable for consequential damages to the shipper or for damages arising from losses to third parties because liability can in no event exceed the actual value of the cargo.

Because the parties agree that subparagraphs B and C do not apply, any limit in Paragraph 11 is set out in subparagraphs A and D. Accordingly, Saia's liability was "limited to" either A, the "actual invoice value of the cargo lost or damaged," or B, "a maximum of

FINDINGS AND RECOMMENDATION - 8

$1.00 per pound, per package, whichever is less, provided such declaration of value appears on the Bill of Lading."

Subparagraph A clearly sets out the value of the cargo as one possible measure of a shipper's damages. Subparagraph D, by contrast, is incomprehensible, internally inconsistent, and incoherent. Defendant Saia contends that the phrase "whichever is less" must refer to the lesser of subparagraphs A, B, C, and D. However, as Saia's counsel conceded during oral argument, in order to accurately convey that meaning, any "whichever is less" clause would need to be separate and apart from subparagraph D. As it is written, the "whichever is less" clause can <u>only</u> refer to terms set out in subparagraph D itself. In that subparagraph, the only words to which the "whichever is less" clause might apply are "per pound, per package." If so, the clause perhaps implies that there is a difference between "per pound" and "per package," with an "or" missing between those two, and that liability is limited to the lesser of $1 per pound or $1 per package. However, from the other numerous references to "per pound, per package" in the tariff, it is evident that the absence of an "or" between those terms is intentional, and the meaning of the phrase "whichever is less" in subparagraph D cannot be determined with confidence.

This is not the only serious problem with subparagraph D. Following the "whichever is less" clause, this subparagraph states that a "$1 per pound, per package" limitation applies if "such declaration of value appears on the Bill of Lading." This makes no sense. As I noted during the hearing, if declaring a value on the bill of lading <u>limits</u> the carrier's liability, a shipper has no incentive to provide such a declaration. Limiting liability to $1.00 per pound when a value is declared on the bill of lading is inconsistent with other provisions of the tariff, which provide for <u>greater</u> potential liability when a value is declared on the bill of

FINDINGS AND RECOMMENDATION - 9

lading and higher shipping rates apply.[3] Moreover, subparagraph D does not purport to limit liability simply where <u>any</u> declaration of value is stated in the bill of lading, but where "<u>such</u> declaration of value" is made. [Emphasis added] The only term to which "such" could refer is the "$1.00 per pound, per package" which precedes "such declaration" in the sentence. Read literally, this would limit liability to "$1.00 per pound, per package" only if a valuation of $1.00 per pound, per package, were stated on the Bill of Lading.

The remaining difficulty with subparagraph D is the absence of any declared value on the bill of lading prepared for plaintiff's fungicide shipment. Under defendant Saia's interpretation of subparagraph D, the carrier's liability is limited to $1 per pound <u>unless</u> a "declaration of value appears on the Bill of Lading." Though defendant Saia asserts that its liability is limited to $1 per pound, no declaration of value for the fungicide was set out in the relevant bill of lading.

Defendant Saia argues that, because Paragraph 11 is a limitation of liability, the court should read it as if a period were inserted after "per package" in subparagraph D, and as if the phrase "whichever is less" appeared as a separate provision below the other subparagraphs. It contends that this interpretation is consistent with the understanding of liability in the trucking industry. Defendant Saia further contends that a provision purporting to limit liability if a value is declared on the bill of lading "makes sense throughout the industry and means that limitation of liability applies unless **the shipper** declares a higher value and requests excess liability coverage." Defendant's Reply to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment at 5. [Emphasis in original.]

---

[3]See, for example, Paragraph 8 of Item 108, which provides for "excess liability coverage" when a shipper declares a higher value, requests excess liability coverage, and pays a higher rate than the "handling unit rate" applied to plaintiff's shipment here.

These arguments are not persuasive. A competent drafter could easily edit Paragraph 11 of Item 108 so that it clearly reflected the meaning ascribed it by defendant Saia. However, the relevant provisions, as written, do not establish that the carrier's liability for the shipper's lost cargo was limited to $1 per pound. Paragraph 11 simply does not accurately or adequately communicate an intention to limit the carrier's liability to the lesser of the possibilities enumerated, and a shipper who read this paragraph could not reasonably be expected to understand it to limit liability to $1 per pound under the circumstances giving rise to this action.

In order to understand subparagraph D as defendant Saia advocates, a shipper would have to, in effect, put a period after "per package," move the "whichever is less" clause to a separate sentence preceding or succeeding subparagraphs A, B, C, and D, and state that the carrier's liability is limited to the lesser of those four possibilities. The shipper would also be required to conclude that a phrase stating that a $1 per pound limitation applied <u>if</u> a declaration of value appeared on the bill of lading actually meant that liability was limited to $1 per pound <u>unless</u> a declaration of value was stated on the bill of lading.

Defendant Saia's interpretation of Paragraph 11 would require substantial editing of the tariff and the conclusion that part of subparagraph D has a meaning that is opposite that of its terms as written. A shipper cannot be reasonably expected to intuit a meaning that is inconsistent with the tariff provisions as written, and this court cannot modify Paragraph 11 to conform to Saia's understanding. <u>See</u>, <u>e.g.</u>, <u>Westlands Water Dist. V. United States</u>, 337 F.3d 1092, 1103 (9th Cir. 2003) (court cannot "add words to a contract, which would impermissibly re-write the contract"). Accordingly, plaintiff Zabel cannot be bound by the $1.00 per pound limitation set out in Paragraph 11.

FINDINGS AND RECOMMENDATION - 11

In analyzing the pending motions, this conclusion presents two paths to the same result. The first of these flows directly from the Carmack Amendment, which generally provides that carriers are liable for the actual value of the cargo they lose or damage unless the shipper agrees to a different measure of liability. As noted above, the Carmack Amendment requires a carrier seeking to further limit its potential liability to make a written tariff available to the shipper, offer the shipper a reasonable opportunity to choose between levels of liability, obtain the shipper's agreement as to the liability limit, and issue a bill of lading reflecting that agreement before moving the shipment. OneBeacon, 634 F.3d at 1099. Because Paragraph 11 could not reasonably inform a shipper that liability would be limited to $1per pound under the circumstances presented here, defendant Saia did not "obtain" plaintiff Zabel's agreement as to that limitation, and the statutory liability for the value of the cargo applies. The alternative is to simply eliminate subparagraph D because it is incomprehensible and internally inconsistent. Given the parties' agreement that subparagraphs B and C do not apply, this leaves subparagraph A as the only relevant provision. That provision, like the Carmack Amendment, renders a carrier liable for the actual value of lost cargo.

For the reasons set out above, defendant Saia did not effectively limit its liability for plaintiff Zabel's missing cargo, and plaintiff is entitled to recover the value of the material that was lost. Plaintiff Zabel has submitted unrebutted evidence that the value of the lost pallet of fungicide and the cost of its shipment totaled $43,658.59. Plaintiff should recover this amount.[4]

## **Conclusion**

---

[4] I have not attempted to reconcile the $.05 difference between this and the allegation in the complaint that the property "was reasonably worth $43,658.54."

FINDINGS AND RECOMMENDATION - 12

For the reasons set out above, defendant Saia's motion for partial summary judgment (# 14) should be DENIED, and plaintiff Zabel's motion for summary judgment (# 23) should be GRANTED. A judgment should be entered awarding plaintiff Zabel damages in the amount of $43,658.59.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due September 16, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 30th day August, 2011.

       /s/ John Jelderks
       John Jelderks
       U.S. Magistrate Judge