IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DAN ZABEL TRADING COMPANY,
INC., an Oregon Corporation,

                  Plaintiff,                No. CV-10-805-JE

      v.

SAIA, INC., aka SAIA MOTOR            ORDER
FREIGHT LINE, a foreign corporation,

                  Defendant.

HERNANDEZ, District Judge:

      Magistrate Judge Jelderks issued a Findings and Recommendation (#34) on August 30,

2011, in which he recommends the Court grant plaintiff's motion for summary judgment, deny

defendant's motion for partial summary judgment, and enter a judgment for plaintiff in the

amount of $43,658.59 representing the value of cargo lost while being transported by defendant.

      Defendant timely filed objections to the Findings and Recommendation. The matter is

1 - ORDER

now before me pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report.  28 U.S.C. § 636(b)(1); <u>Dawson v. Marshall</u>, 561 F.3d 930, 932 (9th Cir. 2009); <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Defendant raises three objections to the Findings & Recommendation:  (1) that the Magistrate Judge erred when he concluded that defendant failed to limit its liability for the cargo loss; (2) that the Magistrate Judge erred when he concluded that plaintiff is entitled to summary judgment on the merits of its Carmack Amendment claim; and (3) that the Magistrate Judge erred when he referred to non-Carmack Amendment claims and as a result, applied the wrong legal theory.

As to the last objection, the Magistrate Judge noted that plaintiff sought to recover the value of the missing fungicide pursuant to the Carmack Amendment to the Interstate Commerce Act, and under common law breach of contract and conversion claims.  Findings & Rec. at p. 4. Although plaintiff's original Complaint raised these three claims, plaintiff's Amended Complaint brought only a Carmack Amendment claim.  However, while the Magistrate Judge erroneously referred to the breach of contract and conversion claims, he expressly stated that the pending motions addressed defendant's potential liability only under the Carmack Amendment.  <u>Id.</u> at p. 4 n.2.  Thus, the passing reference to the non-Carmack Amendment claims is of no consequence.

As to the first objection, the Magistrate Judge supported his conclusion that defendant did not effectively limit its liability to $1.00 per found with several pages of discussion.  <u>Id.</u> at pp. 5-12.  As part of that discussion, the Magistrate Judge adopted defendant's arguments that it

2 - ORDER

satisfied the first two elements of the "limitations of liability" analysis used by the Ninth Circuit. Id. at pp. 5-6 (finding that the first requirement was satisfied because defendant made its tariff available to plaintiff and that the second requirement was satisfied because plaintiff, as shipper, had an opportunity to choose between different levels of liability).

Additionally, the Magistrate Judge noted that there were no Ninth Circuit decisions addressing the limitation of liability of a carrier where the shipper, rather than the carrier, prepares the bill of lading. Id. at p. 4. Citing an Eleventh Circuit case for the proposition that a shipper is bound by the limiting terms of the contract if the shipper drafts a bill of lading that incorporates language understood throughout the motor carrier industry to limit the liability of the carrier, the Magistrate Judge assumed that if presented with the issue, the Ninth Circuit would agree with the Eleventh Circuit. Id. (relying on Siren, Inc. v. Estes Express Lines, 249 F.3d 1268, 1274 (11th Cir. 2001)). This was an argument made by defendant. See Deft's Mem. in Support of Mtn for Partial SJ at pp. 4-5, 8-10; Deft's Reply Mem. at p. 9.

The third element of the applicable analysis requires the carrier to show that it obtained the shipper's agreement as to the choice of the carrier liability limit. Id. at p. 5 (citing Hughes Aircraft Co. v. N. Am. Van Lines, Inc., 970 F.2d 609, 611-12 (9th Cir. 1992) and OneBeacon Ins. Co. v. Haas Indus., Inc., 634 F.3d 1092, 1099 (9th Cir. 2011)). The Magistrate Judge initially concluded, in support of defendant, that regardless of whether plaintiff had ever read the limitation of liability language of defendant's tariff, it was on notice of its existence and was bound by its terms. Id. at p. 8. Nonetheless, the Magistrate Judge, after carefully examining and parsing the language of the contract, concluded that the limitation of liability language in the tariff was incapable of effectively limiting defendant's liability to $1.00 per pound of cargo. Id.

3 - ORDER

at pp. 8-12 (noting at one point that the language of limitation was "incomprehensible, internally inconsistent, and incoherent").  Because the limitation of liability language did not effectively communicate to the shipper that liability was limited to $1 per pound, defendant failed to establish that it satisfied the third requirement of the applicable Hughes/OneBeacon analysis. The Magistrate Judge did not err in reaching this conclusion.

Finally, defendant argues that the Magistrate Judge erred in recommending that judgment on the Carmack Amendment claim be awarded to plaintiff.  Defendant contends that the record fails to establish an absence of material fact on the issue of whether plaintiff tendered the goods to defendant in good condition.

"The Carmack Amendment, 49 U.S.C. § 11707(a), (c), subjects a motor carrier transporting cargo in interstate commerce to absolute liability for "actual loss or injury to property." Hughes Aircraft, 970 F.2d at 611 (citing Missouri Pacific R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 137 (1964)).  The Carmack Amendment codifies the common law rule that a common carrier is liable for damage to goods it transports unless it can be shown by a preponderance of the evidence that damage was caused solely by an act of God, a public enemy, the act of the shipper, public authority, or an inherent vice or nature of the goods.  Thousand Springs Trout Farms, Inc. v. IML Freight, Inc., 558 F.2d 539, 541 n. 4 (9th Cir. 1977) (citing Missouri Pacific).  As can be seen, the burden of proof is on the carrier to show that the damage was caused by one of the listed causes, allowing the carrier to avoid liability.

However, as explained in Missouri Pacific, before that burden is imposed on the carrier, the shipper must make out a prima facie case of the carrier's negligence by showing delivery of the goods to the carrier in good condition, delivery by the carrier in damaged condition, and

4 - ORDER

damages.  Missouri Pacific, 377 U.S. at 138.  Once these three elements are established, a

presumption of negligence operates against the carrier, who must then come forward with

sufficient facts to establish that any damages were due solely to one of the excepted causes noted

above.  Id.

Curiously, defendant never raised this argument before the Magistrate Judge.  The record

in the case, including all of the summary judgment briefing by both parties, indicates that the

only matter in dispute was the limitation of liability.  This argument appears to be a last-ditch

effort by defendant to avoid paying the full value of the shipment that it lost.

My review of the record indicates that there is sufficient circumstantial evidence to

establish that the missing fungicide was tendered to defendant in good condition.  First, there is

no dispute that defendant received the goods.  See Deft's Mem. in Sup. of Motion at pp. 1-2

(conceding that plaintiff "tendered cargo, consisting of two pallets of fungicide, to SAIA for

transport"); Exs. A-1, B-2 to Herbert Decl. (bill of lading for two pallets); Ex. A-4 to Herbert

Decl. (defendant's invoice for two pallets).  The only issue is the condition of the goods.

Second, the bill of lading, signed by Dan Zabel and defendant's driver, contains a space to

write a description of the articles shipped.  Exs. A-1, B-2 to Herbert Decl.  Presumably, if goods

to be shipped are in anything but "good condition," a notation to that effect would appear in that

"description" section.  The bill of lading contains no information indicating that the fungicide, at

the time defendant received it, was in anything but good condition.  Id.[1]

---

[1]  Where goods are open and visible to the carrier, the shipper can rely solely on a bill of
lading to establish the contents and condition of the cargo.  E.g., Security Ins. Co. of Hartford v.
Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  When they are not visible for
inspection, plaintiff may still rely on the bill of lading, but must present additional direct or
circumstantial evidence to show the carrier received the cargo in good condition.  Id. at 84.  Here,

Third, the invoice from plaintiff's fungicide supplier shows that plaintiff paid $80,465 for the cargo that defendant shipped. Ex. B to Zabel June 2, 2011 Decl. at p. 2. The entire order was based on the same unit price, suggesting that this was one product, all of the same quality, packaged into cases and put on pallets for shipment. This creates an inference that there was no variation in the quality of the goods tendered to defendant. Finally, the fact that one of the pallets arrived without incident and without apparent complaint regarding quality or damage, further suggests that defendant received both pallets in good condition.

This evidence sufficiently establishes plaintiff's prima facie burden of showing that defendant received the cargo in good condition. Thus, defendant's argument to the contrary is without merit and the Magistrate Judge's recommendation that plaintiff be awarded judgment for the full value of the missing cargo was not in error.

I have carefully considered defendant's objections and conclude that the objections do not provide a basis to modify the Findings and Recommendation. I have also reviewed the pertinent portions of the record *de novo* and find no error in the Magistrate Judge's Findings and Recommendation.

CONCLUSION

The Court ADOPTS Magistrate Judge Jelderks's Findings and Recommendation [#34]

---

the record indicates that the fungicide was in cases which were shrink-wrapped on a pallet. But, shrink-wrapping in and of itself may not make the cargo not visible. See YRC, Inc. v. Royal Consumer Products, LLC, No. 3:09cv1451, 2011 WL 3819651, at *8 (D. Conn. Aug. 26, 2011) ("color and opacity of the shrink-wrap surrounding the pallets" could affect visibility). Assuming, however, that the shrink-wrapping at issue here precluded visibility of the cargo, I analyze whether plaintiff has adduced additional circumstantial evidence of the condition of the goods.

and, therefore, defendant's motion for partial summary judgment [#14] is denied, plaintiff's

motion for summary judgment [#23] is granted, and plaintiff is awarded judgment in the amount

of $43,658.59.

IT IS SO ORDERED.

DATED this  20th      day of   October          , 2011.


 /s/ Marco A. Hernandez                     
MARCO A. HERNANDEZ
United States District Judge


7 - ORDER